# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

CRYSTAL SHELL,                              ]
                                           ]
        Plaintiff,                    ]
                                           ]
 v.                                      ]   No. 2:19-CV-
                                           ]
PARKDALE MILLS, INCORPORATED,              ]
                                           ]
        Defendant.                    ]

## COMPLAINT

Plaintiff Crystal Shell files her complaint for damages and relief for the defendant's retaliatorily and discriminatorily discharging her because she pursued a Tennessee Workers' Compensation claim for medical benefits and for its deliberately interfering with her participation in its employee health insurance benefit plan and avers:

1. This Court has authority to hear the plaintiff's state law retaliatory discharge claims by virtue of its diversity of citizenship jurisdiction, codified at *29 U.S.C. §1332.* The plaintiff's state law retaliatory discharge claims are premised upon the provisions of *T.C.A. §50-6-114* and Tennessee common law.

2. This Court has authority to hear the plaintiff's federal ERISA discrimination and interference claims pursuant to its federal question jurisdiction

codified at *29 U.S.C. §1331*.  The plaintiff's claims for equitable relief due her for the defendant's  ERISA-discrimination and interference with her participation in its employee benefit plan are premised upon the provisions of *29 U.S.C.  §1140* and *29 U.S.C.  §1132*.

3.    Plaintiff Crystal Shell is a 28-year-old white female. She is a resident of Johnson County, Tennessee.  At the times pertinent to her claims for a retaliatory discharge, Ms. Shell was employed by defendant Parkdale Mills.  She originally underwent training to operate the defendant's Marzoli Spinning frames. The plaintiff is a resident of the state of Tennessee for purposes of this Court's diversity of citizenship jurisdiction.

4. Parkdale Mills, Incorporated, is a privately held corporation with headquarters located at 531 Cotton Blossom Circle, Gastonia, N.C. 28054-5245. Parkdale Mills owns and operates twenty-four plants in various states and is currently producing more than 3,500,000 pounds of yarn weekly.  The company employs more than 3000 individuals.  The defendant company owns and operates a combed cotton yarn manufacturing facility in Mountain City, Tennessee. Parkdale Mills purchased the Mountain City textile factory in 2009.  The defendant's registered agent is listed by the Tennessee Secretary of State's Office as the C T Corporation System, Suite 2021, 800 S. Gay Street, Knoxville, TN 37929-9710. The defendant is a citizen of the state of North Carolina for purposes of this

2

Court's diversity of citizenship jurisdiction.

5. Because of her apparent allergy to the polyester fiber utilized to make thread in the defendant's Marzoli Spinning frames, the plaintiff was moved to training on the defendant's Heather spinning frames as a ring spinner. While the plaintiff was working at the defendant's Mountain City plant on Monday April 9, 2018, and was walking between two spinning frames, she stepped on a floor air vent whose cover guard had been left unsecured. The plaintiff fell into the open air vent.

6. As a result of her on-the-job fall into the air vent, the plaintiff injured her right leg. The plaintiff filled out an accident report in the defendant's break room and sat in pain on a break room chair until the defendant sent the plaintiff home for the remainder of the day. None of the defendant's managers or supervisors arranged for the plaintiff to taken to any health care provider for examination or treatment of her injuries. By the next day, the plaintiff's right leg had swelled to one and a half times its original size.

7. The plaintiff attempted to work the day after the work accident with her swollen leg. Her boyfriend helped her walk into the defendant's factory. The plaintiff began losing feeling on the back of her right leg. The plaintiff's increasing leg pain prevented her from doing any productive work. The plaintiff's injured leg began to turn blue.

3

8. The plaintiff talked with the defendant's Human Resources Manager Faye Thompson about obtaining medical treatment for her injured leg. HR Manager Thomson told Ms. Shell that she, Thompson, would determine if the plaintiff needed to see a doctor. Ms. Thompson announced that there was nothing wrong with the plaintiff's leg. Thompson told Ms. Shell she was just "a little bruised" and should go back to work.

9. Supervisor Pardue assigned the plaintiff to sit in the office and put labels empty cones. The plaintiff told the company supervisors how badly her injured leg hurt and asked each of them if she could be sent to a doctor for treatment. The supervisors insisted that the plaintiff was "O.K."

10. On Wednesday, April 11, 2018, the plaintiff stayed home and put ice packs on her legs. Ms. Shell did not have any medical insurance and could not afford to pay for a doctor to examine and treat her injured leg.

11. On April 12, the plaintiff's boyfriend drove her to work. Ms. Shell "hopped" into the defendant's factory. She again asked supervisor Pardue for the company to send her to a doctor. Pardue responded: "No - you're walking." Ms. Shell had to sit on the floor in pain taking thread off the frames' bobbins. Her right leg was now bruised and black.

12. Desperate for medical treatment, the plaintiff asked supervisor John Hammett if she could please be sent to a doctor for her injured leg. Hammett

4

told the plaintiff to talk to "Faye" - the defendant's HR manager. The plaintiff again talked to HR Manager Thompson and requested that the company send her to see a doctor on workers' compensation. Thompson said again: "No. You're fine."

13. On Friday, April 13, the plaintiff again asked supervisor Pardue to be sent to a worker's compensation physician. Pardue replied snidely: "You're not better yet?" The plaintiff insisted that "no, I am not better," that she had fallen down a hole at work and needed to see a doctor. Ms. Shell explained that she needed to go to a doctor under the company's workers' compensation insurance because her medical insurance did not "kick-in" until April 17. The plaintiff explained could not put her weight on her right leg without becoming nauseated by the pain. Supervisor Pardue responded that the plaintiff was "walking fine." Instead of providing the plaintiff with medical care as required by the Tennessee Workers' Compensation statutes, the defendant insisted the plaintiff do her regular "ring spinner" work as a "floater."

14. In continuing pain and completely frustrated by the defendant's refusing to furnish her with medical treatment for her work injury and insisting instead that she work with a severely bruised and swollen leg, the plaintiff asked HR Manager Thomson for a copy of the workers' compensation accident report so she could take it to Dr. Thompson, a local physician utilized by the company for

5

worker's compensation injuries. Thompson refused and stated that she would not give the plaintiff a worker's compensation accident report and that the plaintiff was "fine."

15. The plaintiff suffered through her weekend off days with continuing leg pain. Still badly bruised, Ms. Shell returned to work on Monday, April 16, 2018. Supervisor Pardue assigned the plaintiff to work the spinning frames as a floater. Pardue again ignored the plaintiff's plea that she needed to see a doctor.

16. The plaintiff talked again to HR Manager Thompson and asked for a copy of the on-the-job injury accident report so she could see a doctor. Thompson replied that she had lost it. Later during the work day, supervisor Pardue approached the plaintiff and advised her that the company was "letting her go" because her "90-day probation period was up" and she wasn't able to run her machines.

17. The defendant's announced reason for suddenly discharging the plaintiff was pretextual. The defendant's supervisors had never advised the plaintiff that she had not been to adequately performing her job duties.

18. Additionally, had the plaintiff not be retaliatory discharged, the plaintiff would have been eligible for the company's ERISA employee health insurance benefit plan the next day, April 17, 2018. The defendant's discharging

6

the plaintiff in order to interfere with the plaintiff's obtaining and utilizing benefits under its employee health insurance benefit plan was deliberate, willful, in bad faith, and was a substantially motivating factor in the defendant's discharging the plaintiff.

19. After she was illegally and retaliatorily discharged, the plaintiff contacted Tennessee Worker's Compensation offices on April 17 and described the defendant's continued refusal to provide her with medical attention after her on-the-job injury. Apparently. the state's worker's compensation representatives contacted the defendant's Human Resources Manager and reminded the defendant of its statutory obligations to provide the plaintiff with medical treatment of her on-the-job leg injury.

20. HR Manager Thompson telephoned the plaintiff and arranged to meet her at the Johnson County Community Hospital Emergency Room. Thompson told Ms. Shell that she had not been fired because of her on-the-job accident. The Emergency Room physician examined the plaintiff and told her and Ms. Thompson that the plaintiff should be off work for two weeks. The doctor prescribed pain medication and anti-inflammatory medication for the plaintiff.

21. Despite being reminded of its statutory worker's compensation obligations, the defendant did not offer to reinstate the plaintiff after it had retaliatorily discharged her.

7

22. The plaintiff has not been able to locate comparable employment in the Johnson County area.

23. The plaintiff avers that the defendant maliciously and deliberately discharged her because she continued to demand that the company afford her medical treatment pursuant to the Tennessee workers' compensation laws. The plaintiff's claim for worker's compensation medical benefits was a substantial motivating factor Parkdale's discharging her. The defendant's violations of its worker's compensation obligations was intentional, deliberate, and malicious.

24. Under Tennessee law as explained by the Tennessee Supreme Court in *Clanton v. Cain-Sloan,* 677 S.W.2d 441 (Tenn.1984), an employer's discharging an employee because that employee has made a claim for worker's compensation benefits, is a prohibited "device" under *T.C.A.* §*50-6-114* which ostensibly allows an employer to deliberately avoid paying workers' compensation benefits. At *677 S.W.d2d 445*, the *Clanton* decision concluded that a legal cause of action was impliedly created by the Tennessee worker's compensation statutory scheme to secure the rights of the injured employee and to fulfill the intention of the state legislature.

25. Plaintiff Shell avers that when she repeatedly notified the defendant's supervisors and HR Manager during the week of April 9, 2018 that she had injured her right leg on the job and needed medical attention, she triggered the

affirmative obligation on Parkdale's part under the state's workers' compensation law to furnish her with whatever medical treatment she might reasonably require, free of charge, [*T.C.A. §50-6-204(a)(1)*], and to furnish her with a list of three or more physicians from which she could choose to receive treatment. [*T.C.A. § 50-6-204(a)(4)*]. Plaintiff Shell repeatedly insisted that she was entitled to medical treatment under the company's worker's compensation insurance. The circumstances of the plaintiff's on-the-job injury and her repeated requests to the defendant's supervisor and to its HR Manager for worker's compensation medical treatment constitute a claim for workers' compensation benefits which supports her retaliatory discharge claim. *Elliot v. Blakeford at Green Hills, 2000 WL 1817228, 17, IER Cases 129 (Tenn. App. 2000) at pages \*4-\*6* and *Whirlpool Corp. v. Pratt, 2008 WL 4615709, 28 IER cases 523 (Tenn. App. 2008) at page \*4-\*5*.

26. The plaintiff avers that her making repeated claims for workers' compensation medical treatment was a substantial motivating factor in the defendant's discharging her. She avers that her discharge was also motivated in substantial part by the defendant's illegal intention to deny her participation in its ERISA employee health insurance benefit plan which would have begun the day after she was discharged.

27. As a result of the defendant's retaliatory discharge, the plaintiff has sustained lost wages and will continue to lose wages in the future. She has

9

suffered mental distress, embarrassment, and anxiety. The defendant's earning capacity has been impaired and her enjoyment of life has been diminished. The plaintiff is entitled to awards of compensatory damages and punitive damages from the defendant under Tennessee law.

28. As a result of the defendant's discharging the plaintiff in order to deliberately interfere with the plaintiff's ERISA right to participate in its employee health insurance benefit plan, the plaintiff suffered lost wages and employee health insurance benefits, and will lose wages in the future. She is entitled to an award of equitable relief in the form of lost wages and lost medical plan benefits, and to an award of front pay to be determined by the Court.

WHEREFORE THE PLAINTIFF DEMANDS:

1. Judgment against the defendant for an award of compensatory damages in the amount of at least $1,000,000.00.

2. Judgment against the defendant for an award of punitive damages in the amount of at least $1,000,000.00.

3. An award of lost wages, lost benefits, and front pay as determined by the Court.

4. A jury to try her legal claims.

10

5. For the defendant's deliberate and willful ERISA violations, an award of equitable relief to the plaintiff in the form of lost wages, lost medical benefits, medical expenses, and front pay as determined by the Court.

6. An award of attorney's fees as the prevailing party as provided by each applicable federal and state statute.

7. Such other relief as will make the plaintiff whole.

Respectfully Submitted,

s/ C. R. DeVault, Jr.
CHARLTON R. DEVAULT, JR.
TN BPR #000428
102 Broad Street
Kingsport, TN 37660
(423) 246-3601

ATTORNEY FOR THE PLAINTIFF

11